S. J. SCHMOKER, *Appellee*, v. L. R. MILLER, *Appellant.*

No. 18,157.

SYLLABUS BY ·THE COURT.

1. PARTNERSHIP — *Accounting* — *No Mistake*—*Settlement Final.*
In a farming and stock-raising business, carried on jointly
for six years by the owner and the occupant of a farm, annual
settlements were made after the first year and balances agreed
upon. After the close of the business there was a final ac-
counting and a balance found due to the occupant was agreed
upon. A check was given by the owner in part payment of
this balance with a promise to give notes for the remainder.
At the same time a bill of sale was given by the occupant for
his interest in the joint property. After all this had been
done the owner demanded a credit for cream sold from the
place. At two different annual settlements he had complained
that too much cream was being sold but had never insisted
upon any credit therefor. There was no charge or proof of
any mistake or concealment in respect to the cream. Under
the contract recited in the opinion, and in the circumstances
stated, the court did not err in refusing to submit this claim
for credit to the jury.

2. ——— *Pleadings*—*Evidence*—*Counterclaims.* The pleadings
and evidence relating to other items of credit claimed by the
defendant are examined and the action of the district court in
refusing to submit such claims to the jury approved.

3. PARTNERSHIP—*Accounting*—*When Settlement is Final.* Where
in settlement of extensive business transactions parties have
deliberately accounted and in good faith agreed upon a balance
intended to be final, the result should be accepted by a court
unless for some legally sufficient reason substantial justice
requires that the settlement should be opened or set aside.

Appeal from Ford district court. Opinion filed May
10, 1913. Affirmed.

*L. A. Madison,* and *Carl Van Riper,* both of Dodge
City, for the appellant.

*Thomas A. Scates,* and *Albert Watkins,* both of
Dodge City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The plaintiff sued to recover a balance found due to him upon a settlement of joint transactions in stock raising and farming. The defendant interposed counterclaims for cream and poultry sold and for the value of five calves not accounted for in the settlement.

The plaintiff and defendant operated the defendant's farm for six years under a written contract, each contributing one-half in value of the farm machinery and of all stock, such as horses and cattle. The plaintiff agreed to furnish all the labor and do all repairing upon buildings, fences, etc., the material to be furnished by defendant. The expenses for repairs on machinery and for seed and threshing were to be borne jointly. The contract contained the following provisions:

"No claim will be made by L. R. Miller for any garden stuff such as is planted on any 1st class farm which may be raised on said farm also no part of poultry, eggs, milk or butter which is raised and handled on farm shall be claimed by L. R. Miller. It shall be understood that S. J. Schmoker shall not run a dairy, from the proceeds of farm. The proceeds from this farm from stock hay of all kinds feed & grain also seeds which is produced from this farm & ranch shall belong jointly & equally to L. R. Miller and S. J. Schmoker. Any sales made from the proceeds of this farm & ranch shall be divided equally. All profits from pasturing feeding or caring for stock belonging to other parties shall be divided equally." . . .

The size of the ranch is not stated in the abstracts, but in one of the briefs it is referred to as containing 2000 acres. It appears that the operations were extensive, and no complaint is made of any mismanagement, except in relation to matters specified in the counterclaims. A settlement was made at the close of the second year and every year thereafter. There was also a final settlement which included a purchase by

the defendant of the interest of the plaintiff in the stock and machinery. The settlement did not, however, include the wheat not then threshed nor the proceeds of some cattle recently sold, omitted by mistake and adjusted soon afterwards. At the last settlement it was found that the sum of $3200 was due to the plaintiff. The defendant gave his check for $1500 in part payment, and promised to give his note for the balance of the $3200. The plaintiff then went to a bank to deposit the check, and returning for the notes, the defendant made a claim for $1000 for cream sold from the place during the term, offering to pay $700 in full of the balance that had been agreed upon. This offer was refused.

At the first three settlements balances were found due to the defendant. At the fourth settlement the accounts were about even. In the 5th settlement, just before the end of the sixth year, a balance was found due to the plaintiff. At the first and third settlements the defendant complained that the plaintiff was violating the contract by running a dairy and selling cream. It does not appear that any other complaints were made until his demand for $1000 at the final accounting.

The defendant sold cream in town to regular customers in each year amounting to an average of $17 per week in summer and $4 per week in winter. This cream was produced from partnership cows and feed, and was not accounted for in any settlement. The claim for calves not accounted for arose in this way: The plaintiff purchased calves of the Soldiers' Home for $2.50 per head, and paid for them in work. Five of these calves were kept on the place two or three months and fed on milk produced on the place and chop furnished by the plaintiff, and they were then given to his children and taken away from the farm. At the time of the trial these calves had grown to be worth $15 per head.

The court refused to submit the counterclaims to the jury, holding that under the admitted facts "these items must be deemed to have been settled by the parties." The only question is whether the evidence proved that the counterclaims had been so settled. The defendant testified:

"Q. Now, I understood you to say that at these times when you had settlements that you did not have a final settlement. You settled up every item of expense and took into consideration every dollar which had come into your hands, did you not? A. Yes, sir, Mr. Schmoker kept account of his receipts and expenses and I did the same and we compared them and struck a balance up to certain items, the item of wintering stock down there for outsiders and pasturing could not be settled at that time because the stock were still there on the place, but at the next settlement Mr. Schmoker accounted for it and it was taken into consideration in that settlement.

"Q. In other words, every dollar that Mr. Schmoker had received and every dollar which you had received and every dollar which either of you had expended for the firm was all taken into consideration? A. Yes, sir.

"Q. If there was anything that was not taken into account it was some bill that was not due, is that correct? A. Yes, sir.

"Q. All sales of cattle with the exception of about $200.00 worth last August, the money was paid direct to you, wasn't it? A. I think so.

"Q. All sales of wheat hauled in here you collected for and took charge of the money, didn't you? A. Yes. We made a settlement in March, 1911, and our final settlement was in August. That took two or three days. I bought all the stock and machinery and hay. When we figured up the balance due Mr. Schmoker was right around $3200.00. I told him I would give him $1000.00 cash and my note for the balance and he said he would have to have $1500.00 cash, so I agreed to give him check for $1500.00. This was after we had arrived at the balance. I was to have a year's time on the balance. Up to the time we arrived at the balance of $3200.00 I said nothing about him paying one-half of what he had received for cream.

"Q. Never had said a word about it . . . had you? A. Not a word.

"Q. As I understand you, Mr. Miller, you say that after you reached this balance of about $3200, you paid Mr. Schmoker $1500.00 of it in cash, that then you had a talk with him about the cream proposition and inasmuch as he was unwilling to allow you anything you did not give him the note that you were to give him for the balance? A. That is the straight of it."

The defendant knew of the sales of cream, and while he complained of this matter on two different occasions he did not insist upon any credit on that account. At the final accounting the amount due the plaintiff was fully agreed upon, the bill of sale taken and a check given before he made any demand of credit for the cream. It is not claimed that the omission was through any mistake or concealment, and in the circumstances it must be held that it was waived.

The five calves were paid for in work by the plaintiff and his sons. The chop fed to them was furnished at his expense and milk was a comparatively small item. No claim was made on account of these calves even at the final settlement. At that time the defendant only demanded pay for the cream. It appears that this item is an afterthought, and ought not to be allowed to open settlements deliberately made in good faith. The same observation applies to the alleged sales of poultry. The court in rejecting testimony to prove that sales had been made remarked that the claim could not be allowed, unless a further claim was made that this business was carried on extensively or the farm had been turned into a chicken ranch. The petition did not allege that the plaintiff had departed from the business contemplated by the contract, nor did the defendant offer to prove that he had done so.

The policy of the law favors settlements by the parties, and where they have deliberately accounted, and agreed in good faith upon a balance intended to be final, the result should be accepted by a court unless

for some legally sufficient reason substantial justice requires that the settlement should be opened or set aside. (*Minor v. Fike*, 77 Kan. 806, 93 Pac. 264; *Kiler v. Wohletz*, 79 Kan. 716, 101 Pac. 474.)     No such reason being shown, the judgment is affirmed.