No. 30,666.

THE FARMERS STATE BANK OF LINDSBORG, *Appellee,* v. THE COMMERCIAL STATE BANK OF LINDSBORG et al., *Appellants.*

(16 P. 2d 543.)

Opinion filed December 10, 1932.

*G. F. Grattan,* of McPherson, for the appellants.

*A. C. Malloy, Roy C. Davis, Warren H. White,* all of Hutchinson, *Frank O. Johnson* and *J. R. Rhoads,* both of McPherson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for an accounting of the proceeds of chattel property covered by mortgages held by these

litigants, and in which incidental fraud and conspiracy were charged against the defendant bank, its officers, and the mortgagor.

It appears that prior to October 28, 1927, one Lundstrom, a tenant farmer of McPherson county, was indebted to the plaintiff bank in the aggregate sum of $3,457.40 with interest as evidenced by three past-due promissory notes. Lundstrom had been a customer of plaintiff, but prior to the incidents giving rise to this lawsuit he had transferred his account to the defendant.

On October 28, 1927, plaintiff filed suit against Lundstrom on his past-due notes and caused an attachment to be issued on his chattel property consisting of 90 hogs, a corn crop, and 100 acres of fall wheat. The attachment process was served on Lundstrom on the following day, October 29, about the close of banking hours. At once Lundstrom hastened to the defendant bank, rapped on its back door and was admitted. Two days later, on October 31, two chattel mortgages covering the attached chattels and other personalty, executed by Lundstrom in favor of defendant, were filed for record. These mortgages purported to secure Lundstrom's notes, one for $1,056.90 dated October 28, 1927, and the other for $1,600 dated October 29, 1927.

On December 6, 1927, about a week after the filing of the attachment suit and the subsequent filing of defendant's chattel mortgages, Lundstrom and plaintiff effected a settlement whereby the attachment suit was dismissed and plaintiff accepted notes from Lundstrom, one for $500 with personal security and another for $2,500 secured by a junior mortgage on the chattels he had mortgaged to defendant.

During the year 1928 part of the personalty covered by defendant's first and plaintiff's second mortgages was sold. On February 5, 1929, Lundstrom held a public auction and pretended to sell to the highest bidders all the remaining personalty covered by plaintiff's mortgage; but within four days thereafter he remortgaged nearly all the same chattels to defendant. Afterwards some of this remortgaged personalty was sold, and part of it was again remortgaged to defendant in May, 1930.

No accounting of the proceeds of the mortgaged property was ever given to plaintiff by Lundstrom nor by the defendant bank, and eventually this action was begun.

Plaintiff's petition set out most of the facts narrated above, and alleged that the transactions between Lundstrom and defendant which had their inception in his execution of chattel notes and

mortgages to defendant subsequent to the institution of plaintiff's attachment suit were conducted by them purposely to defraud plaintiff; that plaintiff was thereby deceived into the belief that defendant's chattel mortgages filed of record on October 31, 1927, were regular, valid and prior liens on the chattels and personalty which plaintiff had attached; and that in that belief plaintiff accepted a junior mortgage on those chattels and dismissed its attachment suit.

Plaintiff alleged that defendant and its officers had notice and knowledge of plaintiff's junior lien on Lundstrom's chattel property; and that they had caused and permitted much of it to be sold between January 1, 1928, and December 1, 1928, for an amount sufficient to pay in full defendant's senior mortgages and also that of plaintiff; but that defendant had refused to apply any part thereof to the satisfaction of its own liens or to reduce the claimed lien of plaintiff.

Plaintiff also alleged that the public auction of February 4, 1929, was a fraudulent and fictitious pretense that Lundstrom's personalty was sold to satisfy the pretended mortgages held by defendant, and that it was so conducted to defeat the claim and lien of the plaintiff.

Plaintiff also alleged that it did not discover .the fraud practiced upon it pursuant to this conspiracy of Lundstrom and defendant until February, 1929. Plaintiff further alleged that all. it had received on account of Lundstrom's indebtedness due to it was payment of the $500 note, and $362.50 as the proceeds of some wheat covered by its mortgage.

Plaintiff prayed for judgment for the balance due on Lundstrom's indebtedness to it, and for an accounting from all the defendants for the proceeds of all sums realized from the sale of the property covered by its mortgage, and for whatever further equitable relief should be found proper.

Defendant filed a lengthy answer which contained a general denial and pertinent allegations touching Lundstrom's indebtedness to it at the times the notes of October 28 and October 29, 1929, were executed to it, also the chattel mortgages given to secure these notes. One paragraph of defendant's answer reads:

"4. The defendants deny all knowledge or notice of the claimed attachment, and all knowledge or notice of the claimed mortgage of $2,500 alleged in the petition, but admit that the plaintiff bank took its second mortgage of

$2,500 subject to the defendant bank's said two mortgages of $1,056.90 and $1,600 above alleged."

Defendants also pleaded with extended detail subsequent loans made by the defendant bank to Lundstrom and set out certain matters of accounting between it and Lundstrom covering the years 1928 and 1929; and admitted their knowledge of and their consent to the auction held by Lundstrom on February 5, 1929; and denied all claim and right in plaintiff to any of the property after the sale thereof on that date.

While this action was pending the defendant bank passed into the hands of a receiver and that officer was made a defendant.

The cause was tried by the court with the assistance of an advisory jury. Special interrogatories were answered by the jury, some of which read:

"Q. 1. Was the sale of February 5, 1929, conducted in good faith by the defendant Lundstrom and the defendant the Commercial State Bank, as a foreclosure sale? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. 5. Did the defendant Lundstrom buy said property at the public sale? A. No.

"Q. 6. When did the defendant bank, through its officers, have knowledge of the second mortgage of the plaintiff, covering the property on which the defendant had or claimed a first mortgage? A. On or before December 15, 1928.

"Q. 7. Did the defendants or any of them enter into a conspiracy or understanding to impair or destroy the security of the second mortgage of the plaintiff, or the property of defendant Lundstrom? A. Yes.

"Q. 8. If you answer the above question in the affirmative, state which of the defendants so conspired. A. Lundstrom and Commercial State Bank.

"Q. 9. Was the public sale of the mortgaged property, which was held on February 5, 1929, made with the intent of converting the property into cash and applying the proceeds to the payment of any mortgage or mortgages covering the same? A. No.

"Q. 10. Was said public sale held for the purpose and with the intent on the part of the defendants or any of them to deprive the plaintiff of its mortgage lien? A. Yes.

"Q. 11. Was the plaintiff bank defrauded in any manner by the agreement between Lundstrom and his by-bidders that they should bid in the property at said sale and did so? A. Yes.

"Q. 12. If you answer question No. 7 in the affirmative, state the time when said conspiracy was entered into and the acts or conduct which you find constituted it. A. December, 1928. Asking Farmers State Bank [plaintiff] to release mortgage bogus sale, and adding unsecured notes into mortgage, and refusing to give an accounting of the mortgaged property sold.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. 16. When did the defendant the Commercial State Bank, through its president or cashier, have actual notice of the mortgage of the plaintiff, the Farmers State Bank, as actual notice is defined in these instructions? A. On December 10, 1927."

The trial court approved the jury's special findings and also made findings of its own, one of which was that 17 items of hogs, cattle and wheat, amounting to $5,401.45, and covered by plaintiff's and defendant's mortgages, were sold between February 28, 1928, and November 5, 1930; also, that between February 13, 1929, and August 5, 1930, Lundstrom paid defendant items of cash amounting to $1,789.59. The trial court also found that defendant was the owner and holder of Lundstrom's notes and mortgages of October 28 and October 29, 1927, aggregating $3,408.77; and that plaintiff was the owner and holder of a note and second mortgage executed by Lundstrom and that there was a balance of $2,858.15 due thereon. The trial court also found that certain cattle and hogs covered by the chattel mortgages of the litigants were still in the hands of Lundstrom. These were later sold and the proceeds (gross $640.25, net $635.36) accounted for, and a supplemental finding made pertaining thereto.

Judgment was entered in plaintiff's behalf against all the defendants for $2,932.36 as of October 30, 1931, and it was held that of that sum $640.75, less $4.89 for taxes paid, should be a preferred claim on the assets of the defendant bank.

Defendants appeal, urging our attention to various errors, of which those most clearly specified will be noticed in the order of their presentation.

1. Complaint is made as to the sufficiency and competency of the evidence adduced to prove that defendants had notice of the second mortgage given by Lundstrom as an inducement to plaintiff to dismiss its attachment suit. On that point the president of the defendant bank testified:

"A. . . . I didn't know much about that attachment suit until later on. Mr. Lundstrom . . . explained why he had made a settlement at the Farmers State Bank on this attachment suit, and the way he had settled it.

· · · · · · · · · · · · · ·

"Q. You knew it was settled by the giving of a mortgage and a release of the attachment? A. Yes, sir."

Eberhardt, defendant's cashier, testified:

"Q. You made it a practice, I presume, to the best of your ability to keep track of the financial condition of the borrowers at your bank? A. Well, we tried to.

"Q. And in the line of your duty you inquired about and kept track of C. L. Lundstrom's financial condition, did you not? A. Yes, sir."

. . . . . . . . . . . . . . . . .

"The information came to me that the Farmers State Bank had attached the property upon which we had taken a mortgage, but I am not sure how soon. It may have been several weeks after we took the mortgage."

Moreover, the circumstances had considerable evidential potency —at least the triers of fact might so conclude. Lundstrom had been a customer of plaintiff. He changed his account to defendant. It might fairly be inferred—even if defendant's cashier had not virtually admitted it—that defendant made the ordinary inquiries touching his financial status when that change was made, or at least before loaning him, a tenant farmer, the considerable sums evidenced by his notes of October 28 and 29, 1927. It was a highly significant fact that as soon as Lundstrom was served with the attachment process he hastened to the defendant bank after banking hours and was admitted at the back door and that notes and chattel mortgages in favor of defendant of dates almost simultaneous with the attachment were soon forthcoming. The defendant bank's records when produced in court showed that one entry concerning those notes had been made as of October 28 following other entries which recorded transactions of October 29. If evidence of such significance had been adduced in a liquor prosecution nobody would have the hardihood to say such evidence of notice was insufficient to carry the case to the jury. We must hold, also, that the evidence pertaining to the weekly reports of chattel mortgages supplied by the register of deeds at defendant's request and for which it paid was competent on the disputed issue of notice. It is beside the point to argue that this service supplied was unofficial. That fact is of no importance. If the courthouse janitor had informed the defendant that Lundstrom had given plaintiff a second mortgage on his personal property, that fact would have been competent evidence of notice, and the same information supplied unofficially by the register of deeds was no less competent.

2. Error is assigned on the trial court's instruction, No. 10, too long for reproduction, touching the distinction between notice and knowledge of plaintiff's second mortgage. The argument against this instruction is partly predicated on its hypothesis that defendant was entirely ignorant of the fact that plaintiff had accepted a second mortgage from Lundstrom in settlement of its attachment suit. Of course a senior mortgagee has no duty to inspect the public records

to apprise himself of the existence of possible junior liens (unless and until the matter of a renewal of such senior lien requires attention), but the trial court took adequate care of this feature of the case, as follows:

"11. You are instructed that the filing of plaintiff's mortgage is not sufficient to impart actual notice or knowledge of the existence of the chattel mortgage to the owner of the first mortgage. Such owner of the first chattel mortgage must have actual notice or knowledge of the existence of such second mortgage aside from the mere fact that such chattel mortgage was filed."

3. It is next urged that the auction held by Lundstrom was conducted in good faith, and that plaintiff's junior claim was lawfully extinguished thereby. Whether that auction was *bona fide* or simulated and fraudulent was a question of fact; and the evidence which the triers of fact apparently believed was to this effect: The president of the defendant bank testified that the sale bills were printed at his direction and that he attended the sale. Joe Morine testified:

"I was the auctioneer at the C. L. Lundstrom farm on February 5, 1929. C. L. Lundstrom made the arrangements and told me it was going to be 'somewhat of a peculiar funny sale.' He said he didn't expect to sell the property, but he wanted me to make him a price on the job lot in place of a commission arrangement. On account of his representation that it was not an actual sale I made him a special price of $15. . . . After the sale Mr. Lundstrom said the property had all been bid in for him with the exception of the $22.50 item."

Various witnesses testified that they made bids at the auction on various properties, hogs, corn, pigs, calves, cows, and that these were knocked down to them but that they paid no attention to them after the sale. Lundstrom testified that nothing was said about the auction being a foreclosure sale, and that it was advertised as an ordinary public auction. He also testified that only the chattel property covered by plaintiff's mortgage was put up for sale.

In view of such a record it is impossible for this court to hold that plaintiff's rights as junior chattel mortgagee were extinguished by the simulated sale of February 5, 1929.

4. It is next contended that plaintiff should have asserted its rights within a reasonable time after discovering the alleged fraud and duplicity of Lundstrom and the defendant bank. It is not clear from the record just when plaintiff became fully apprised of the fraud. It had not been greatly concerned because of the filing of defendant's chattel mortgages upon the heels of its attachment suit, for the reason that at that time Lundstrom's chattel property was

believed to be quite sufficient to satisfy defendant's mortgages and plaintiff's claim also. Apparently plaintiff preferred a second mortgage on Lundstrom's chattels to a lawsuit with defendant to decide the questions of precedence and *bona fides* between itself as attaching creditor and defendant as ostensible chattel mortgagee. The record shows that Lundstrom was selling his chattels in piecemeal all through the years 1928, 1929, and 1930, but there is no evidence to show that plaintiff knew—or when it knew—that enough of the property had been sold to satisfy defendant's senior liens. There is nothing in the record to show that plaintiff waited an unreasonable time before commencing its action.

5. It is next contended that fraud was not sufficiently pleaded and that it was not proved. Plaintiff's petition was not subjected to a timely attack; defendant chose rather to join issues of fact which the petition tendered. So far as concerns the proof it can hardly be denied that there was competent evidence of fraud. However, those allegations and evidence of fraud may now be regarded as mere matters of inducement; they give a background to an intelligible understanding of the situation which culminated in this lawsuit. The trial court found it possible to determine the rights of the parties without a positive finding of fraud further than implied in its approval of the jury's findings. We discern nothing in such a disposition of the case to justify complaint by defendants.

6. Other points urged against this judgment must be summarily disposed of for want of space and time for further discussion. Defendants were not entitled to judgment on the record. The substitution of the receiver for the defendant bank did not alter or diminish plaintiff's cause of action; the jury's findings 6, 7 and 12 were not adverse to plaintiff; no error transpired in admitting the testimony of the witness Fornberg; the trial court fairly stated the issues to the jury; the plaintiff waived nothing and was not estopped to prosecute its claim in this action; the trial court did not suppress any valid claims or defenses advanced by defendants nor did the court mistake defendants' claims; no error was committed in the instructions given or refused; there is no inconsistency in the jury's findings 6 and 16 or otherwise; the statute of limitations did not bar this action; and the record fails to show that defendants did not have a fair trial.

Before concluding, however, we must say a final word of comment on the sort of an appeal presented here. From first to last the record and the argument have been interlarded with a myriad

of items of account on the assumption that this court should take these up and deal with them separately. Not so, however. That was the function of the trial court, as is the case in any other action involving mere issues of fact. In *City of Oswego v. Condon,* 124 Kan. 823, 825, 262 Pac. 542, where a formidable record involving an accounting to establish an alleged shortage in a city treasurer's funds was submitted for our review, it was said:

"It is altogether beyond the functions of this court to make an independent accounting of the fiscal affairs of the city . . . to determine the status of the treasurer's accounts. It must suffice to say that no manifest or demonstrable error is disclosed in the findings and they will have to stand."

The judgment is affirmed.