No. 33,496

L. F. SMITH, *Appellee,* v. THE DERBY OIL COMPANY, *Appellant.*

(76 P. 2d 846)

Opinion filed March 5, 1938.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing* and *G. K. Purves, Jr.,* all of Wichita, for the appellant.

*A. M. Ebright, P. K. Smith, Bernard Peterson, Richard A. Hickey,* all of Wichita, and *Walter T. Chaney,* of Topeka, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Plaintiff sought to recover money judgments on two causes of action. He prevailed, and defendant appeals.

Plaintiff was placed in charge of defendant's bulk station and service station at Topeka, in 1930. Since 1932 he had operated under written contracts similar to his present contract, which latter contract was executed on April 1, 1934. It provided for a ten-day notice of termination. The parties had developed certain practices in the operation of the business which were not covered by the express terms of the written contract. On November 9, 1934, plaintiff was discharged without previous notice, unless a conversation on the previous day amounted to such notice.

The first cause of action was in the nature of an action on an account. It contained those items which were not covered by the written contract. Various of these items required an accounting, and some of them related to transactions as remote as 1932. The action was tried to a jury, which answered seven special questions. The first six answers pertain to the first cause of action. The second cause of action was for damages for plaintiff's discharge without the notice required by the contract. Answer No. 7 pertains solely to those damages. A proper answer to that question, under the instructions, required an accounting for the seven months' period of operation under the present contract.

The general verdict of $809.27 was a sum total of the seven amounts contained in the special answers, which were as follows:

"1. (a) Do you allow plaintiff any amount on the checks known as the two Ketter checks? A. Yes. (b) If so, in what amount? A. $275.58.

"2. Do you allow the plaintiff the sum of $39.98 as insurance on the buildings? A. Yes.

"3. (a) Do you allow plaintiff any amount on what are known as hold-out or charge-back accounts? A. Yes. (b) If so, what amount? A. $181.84.

"4. (a) Do you allow plaintiff any amount upon claims with reference to what is known as the 'price war' claim? A. Yes. (b) If so, what? A. $86.69.

"5. Do you allow plaintiff the item of $15.77 on tires? A. Yes.

"6. (a) Do you allow plaintiff anything on the Specification Oil Company claim? A. Yes. (b) If so, what amount? A. $81.

"7. What amount, if any, do you allow as damages on the second cause of action? A. $128.41."

Defendant first urges the trial court erred in overruling its motion for a new trial. The contention is based on the theory the jury was prejudiced in favor of the plaintiff, and that such prejudice was par-

ticularly disclosed by both the first and the last answer returned to question No. 7. It is urged the answers disregarded the instructions. Plaintiff had prayed for damages on that cause of action in the sum of $1,155.84. The jury was instructed that under the terms of the written contract plaintiff could recover damages for a period not to exceed ten days. The correctness of that instruction is not now disputed by the plaintiff. The jury originally answered question No. 7 by inserting in the answer the sum of $1,155.84. When the trial court observed this answer it advised the jury recovery on that cause of action had been limited to a period of ten days and that the jury would find the matter covered in the instructions. The jury returned for further deliberation and inserted the sum of $128.41. Defendant urges the jury, in arriving at the second answer, disregarded the court's instructions relative to a deduction of items of expense which plaintiff, under the contract, was obligated to pay.

Under the written contract plaintiff was required to furnish and operate certain equipment at his own expense. Likewise, he was required to provide the necessary labor. Certain other operating expenses of the business were to be borne equally. Plaintiff was to receive as his commission one half of the net profits. The court had instructed the jury to answer question No. 7, on the basis of the average monthly net profits for the seven months of operation under the present contract. The burden of proof was, of course, on the plaintiff to establish his cause of action. This necessitated not only proof of the commissions to which he was entitled, but, also, proof of expenditures and the proper allocation thereof under the contract. Numerous figures, monthly statements, alleged accountings and settlements were involved. The contention of the jury's prejudice was presented to the trial court and that court found against the contention. It had a much better opportunity to safely and accurately appraise the good faith of the jury than this court has now. In view of the complications involved in the accounting, and in view of the trial court's rulings, we do not feel justified in disturbing the judgment on the ground urged. We have carefully examined the authorities cited by defendant and do not believe they compel a new trial under the circumstances in this case.

This was essentially an accounting case. That was true, not only of the second cause of action, but also as to numerous items involved in the six answers pertaining to the first cause of action. It is not the function of this court to make an independent accounting for the

parties. We have on previous occasions definitely stated that in cases of such character this court would not disturb findings after they were approved by the trial court unless there was manifest and demonstrable error. (*Farmers State Bank v. Commercial State Bank,* 136 Kan. 447, 454, 16 P. 2d 543; *Allen County Comm'rs v. Board of Education,* 142 Kan. 770, 51 P. 2d 973.)

We shall therefore give attention only to such items as disclose manifest error on the basis of the record before us. It is also well to note that the trial court instructed separately as to the law applicable to the particular facts in each of the seven transactions involved. We find no objection to such instructions before the case was submitted to the jury and no special instructions were requested. In fact, it is only now suggested that defendant does not understand the theory on which the court instructed as to the matters involved in one of the special questions. It is not alleged the instruction was erroneous.

With the foregoing facts and principles in mind, we shall return to the particular contention that the second answer made to question No. 7 shows that the jury did not take into account the expense items for which plaintiff was liable. Plaintiff's evidence on the subject of average net monthly commissions was conflicting. On cross-examination he testified:

"I figured up my *net profit* from the commission sheets introduced in evidence and it amounted to $385 per month." (Italics inserted.)

On redirect examination he testified:

"Figuring each commission statement makes a total commission for the seven months of $2,636.75, divided by seven, gives an average of $368.09. The commission varied. Out of the average of $368.09 I had to pay my expenses."

While the record before us is very vague on the matter of his average monthly expenses for the seven months' period, it seems to us his own admission discloses he had at least one man employed continuously at $60 per month and that his monthly expense item for gasoline was about $20. In addition thereto, he testified concerning depreciation on his trucks and concerning tire bills, the exact amount of which expense is undisclosed. Deducting, however, only the above expenditures from the sum of $368.09, his net profits for the ten-day period could not have exceeded $90. The answer to question No. 7 is hereby reduced to that amount.

This brings us to the six remaining special answers involved in the first cause of action. Defendant contends all of those items

should have been denied as a matter of law except item No. 5, which is admitted. The contention is not well taken. The practices as to the various items, together with the understanding of the parties concerning the same, presented questions of fact which were properly submitted to the jury.

Answer No. 1 involved the Ketter account. It is conceded that plaintiff was personally liable to defendant for accounts on which defendant had refused to extend credit, and that this was an unauthorized credit account at the time the purchases were made by Ketter. The evidence, however, further disclosed that after the termination of plaintiff's employment defendant took up the checks on this account and accepted notes not from the plaintiff, but from the customer, and not for only one half of the account, but for the entire account. The court instructed the jury concerning the law applicable to this state of facts. The instruction also dealt with the question of a new contract on the obligation made by defendant with Ketter without plaintiff's knowledge or consent. We must assume such facts were all in evidence. No objection whatever was made to the instruction before the case was submitted to the jury, nor is it made now. Under these circumstances we cannot disturb the finding.

Answer No. 2 pertains to insurance on buildings. The written contract contained a clause on the subject of insurance, but it did not relate to insurance on buildings. This claim, however, covered insurance on buildings for several years prior to the present contract. In fact, it covered a period as far back as the year 1932, while plaintiff was operating under other contracts which had expired and were in no wise related to the instant contract. This insurance charge was prorated on a monthly basis and thus appeared on each statement which defendant sent to plaintiff, together with his monthly check. The checks represented plaintiff's net commission or profits for the particular months. Plaintiff admitted he knew this charge was contained in the monthly statements of settlement. He accepted and cashed the checks. While it is true that the parties from time to time made adjustments on subjects in dispute, there was no evidence plaintiff ever objected to this particular insurance charge as being an improper item of operating expense under the "operating clause" of the written contract. Over the period of at least two years it was treated by defendant and accepted by plaintiff as an operating expense. Plaintiff's net profits were figured on that basis, with

his full knowledge and without objection. Under these circumstances these items of insurance should properly have been considered as "accounts stated," and the numerous settlements made thereon by the parties should not have been opened and set aside. (*Schmoker v. Miller*, 89 Kan. 594, 132 Pac. 158; *McKnab-Bess Oil Co. v. Commonwealth O. & G. Co.*, 142 Kan. 739, 746, 52 P. 2d 363; *Porter v. Price*, 80 Fed. 655.)

Answer No. 3 pertains to a reserve account which was in no wise covered by the provisions of the written contract. This account seems to have been set up to absorb losses on slow accounts. It should be remembered that under the written contract plaintiff was personally liable only as to credit accounts on which defendant had refused to extend credit. The credit accounts involved under this item had been authorized by the defendant. One half of the reserve account had been retained out of plaintiff's commissions. Under the written contract he was entitled to the entire commission on these accounts, as credit had been extended thereon by the defendant. At the termination of plaintiff's employment all of the slow accounts had not been paid. A dispute arose as to the exact amount of commissions plaintiff had in this fund and as to whether he was entitled to whatever that correct amount might be, in view of the facts that all of these accounts had not yet been paid. The mere fact the amount of the reserve fund had been inserted in monthly statements did not settle the question of plaintiff's right to recover his share thereof on the termination of his employment. The trial court instructed the jury on the question of determining the amount plaintiff had on deposit in this fund and also on the question of his title thereto at the termination of the employment. No objection was made to that instruction nor were additional special instructions requested. These accounts were not owing to the plaintiff, but solely to the defendant. The jury returned a verdict for one half of this fund, which represented the amount defendant had retained therefor out of plaintiff's commissions. In view of the issues joined and the instructions given, without objection being made thereto, no manifest error appears.

Answer No. 4 pertains to transactions between the parties over a period involving a gasoline price war between oil companies operating in and around Topeka. This dispute involves not only elements of an accounting, but also the determination of conflicting facts as to

the agreement. The instruction covered these issues and no objection was made thereto. The record before us discloses no manifest error.

Answer No. 6 involves a bad account. It was submitted to defendant and rejected for credit. It thereupon became the personal obligation of plaintiff and he was entitled to no commission thereon. He attempts to show now that the credit had been authorized by a field representative. He also admits he knew that Mr. Clairborne, at the Wichita office, and not the field representative, handled all credit arrangements for defendant. The account at the time of the trial was still unpaid. It is uncontradicted that this account was charged off as an uncollected account. Moreover, plaintiff was expressly asked on trial to compare his own statement of account with that of the defendant and to point out the exact items in dispute. He listed the other five items in his first cause of action and expressly stated, "these are the only items in dispute." It is unnecessary to discuss other facts which disclose manifest error as to this item, and answer No. 6 cannot stand.

It is finally urged plaintiff acquiesced in the termination of his employment, and that he did not attempt to mitigate the damages resulting from his discharge. The evidence on these questions was sufficient to require a submission of the facts to the jury.

It will be, and it is, the judgment of this court that plaintiff be permitted within five days from date hereof to accept the judgment as herein modified, to wit, recovery on items Nos. 2 and 6 is denied, and recovery on item No. 7 is reduced to $90. In the event plaintiff elects to accept such judgment, the judgment will be and is affirmed as modified. In the event plaintiff does not elect to accept the judgment as modified, the district court is directed to grant a new trial as to both causes of action. It is so ordered.