No. 34,323

HELEN E. MANHARDT, *Appellant*, v. THE ESTATE OF JOHN SHERIDAN, Deceased, and J. J. EDIGER, as Administrator with will annexed of said estate, *Appellees* and *Cross-Appellants*.

(92 P. 2d 76)

Opinion filed July 8, 1939.

*James B. Nash* and *Robert R. Hasty,* both of Wichita, for the appellant.

*W. H. Von der Heiden, Clifford A. Morgan* and *J. Rodney Stone,* all of Newton, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action, in two counts, was instituted against the administrator of the estate of John Sheridan, deceased. In the first count damages were sought in the sum of $31,500, for the breach of a purported written contract between the plaintiff and John Sheridan, deceased. In the second count the same money judgment was sought on a *quantum meruit* basis for housekeeping and nursing services alleged to have been rendered between December 1, 1927, and the death of Sheridan on February 19, 1937.

Touching the first count, it is sufficient to note that plaintiff testified she signed John Sheridan's name to the contract at his request and in his presence. A special finding of the jury, which is the only

special finding in the case, discloses the jury disbelieved that testimony and plaintiff concedes that finding eliminates the first count.

On the second count the jury allowed plaintiff $1,300, plus interest from the date of Sheridan's death. Plaintiff owed Sheridan a note in the sum of $600 with interest at the rate of seven percent per annum, dated November 19, 1936, upon which there was due at the time of trial $684. Upon stipulation the court instructed the jury to deduct that amount from its verdict, if any, rendered in favor of plaintiff. The jury deducted the amount of the note and returned a verdict for a balance on the second count in the sum of $752. Plaintiff contends the court erred first, in overruling her motion for judgment in an increased amount notwithstanding the verdict, the amount not being specified in the motion, and second, in overruling her motion for a new trial. The first motion was as follows:

"Comes now the claimant, Helen E. Manhardt, and moves the court for judgment notwithstanding the verdict in an *increased amount to be fixed and determined by the court,* for the reason that it affirmatively appears from the undisputed and uncontradicted evidence in the case that the verdict returned by the jury is wholly inadequate to compensate her for the services rendered to the deceased and for the further reason that it affirmatively appears from the record that the jury disregarded the evidence and returned a verdict in the arbitrary sum and amount." (Italics inserted.)

In support of that motion it is argued the correct minimum amount to which plaintiff was entitled is ascertainable by this court from the undisputed evidence. On oral argument before this court it was conceded the trial court probably was not required to and could not properly have rendered a judgment upon that motion, but that this court has authority under the provisions of G. S. 1935, 60-3317, to render such judgment as plaintiff is entitled to upon the record. The substance of the motion for a new trial, as argued here, is that the district court should not have approved the verdict for the reason that it is not supported by, but is contrary to, the undisputed evidence. The trial court in a memorandum opinion analyzed the issues and the evidence. In view of the fact that a trial court is required to approve or disapprove a verdict, the memorandum opinion is especially helpful. It reads:

"As the result of a jury trial, the jury brought in a verdict for claimant for $752, which was, as the jury explained in their verdict, $1,300 plus interest to date less a note for $600.

"This claim was presented in two causes of action, the first based on a written contract in which the deceased agreed to deed to claimant certain real

estate in exchange for her taking care of him the balance of his life. The real estate was valued at approximately $31,500 and claimant brought her action for that amount of money.

"The second cause of action was based on *quantum meruit* for her services from December, 1927, to the day of deceased's death, February 19, 1937, and in which she asked judgment for the same amount, $31,500.

"The defense was a denial of the contract and payment in full for all services rendered.

"Special findings were submitted to the jury at the request of the claimant, only one of which is material: 'Do you find from the evidence that Helen E. Manhardt signed John Sheridan's name to the written contract of December 1, 1937, Exhibit No. 435, in his presence?' The jury answered, 'No.' That answer effectively disposed of any claim based on a written contract. If there was a verbal contract it must be found to exist by reason of the facts and circumstances rather than by direct testimony, as the testimony from the witnesses alone would hardly sustain such a finding.

"Claimant worked for John Sheridan, the deceased, off and on from December 1, 1927, until the day of his death, February 19, 1937. During that time she performed all the duties required of her, part of the time those of a trained nurse, when he was sick or drunk and part of the time those of an ordinary housekeeper. She was not with him all of the time during those nine years, and may have been on vacations, and unemployed as much as four or five months, according to her testimony, but judging from circumstances and other evidence, the time was much longer than that, possibly as much as ten or twelve months. Claimant was not very definite as to the number of weeks or months she actually worked and without something to refresh her recollection which she did not seem to have, she could not be.

"There were 451 exhibits introduced in the case. Among these were the following which the jury sent for after they had retired to deliberate and had them with them in the jury room: The bank statement of John Sheridan with the Kansas State Bank of Newton, from October 20, 1936, until it was closed out March 9, 1937 (Exhibit 433); the bank statement of Helen E. Manhardt with the same bank from December 3, 1931, the day she opened her account until it was closed out on March 24, 1937 (Exhibit 448); 409 paid checks drawn by John Sheridan during his lifetime on this bank account, totaling $21,609.91 (variously numbered exhibits); an analysis (Exhibit 428) of the expenditures made by John Sheridan as shown by these paid checks.

"The Sheridan bank statement shows that approximately 840 checks were drawn during this time, which makes it apparent that there were as many paid checks that had not been found by the administrator as he had found. The statement also discloses that there were $38,428.80 in debit items, which leaves the balance represented by these paid checks that are missing at $17,821.99. The analysis of the paid checks that were introduced in evidence (Exhibit 428) discloses that thirty-five checks were found payable to Helen E. Manhardt, in the total sum of $6,630.98, but there were two small items included here, amounting to $25.98, that show on their face they were for purposes other than payment of wages, and should be deducted from any amount represented by checks drawn to Helen E. Manhardt, but this leaves $6,605 paid Miss Man-

hardt between December 31, 1931, and January 27, 1937, the date of the last check, and all of these checks were cashed by Miss Manhardt.

"Claimant admits receiving these checks, but insists the amounts represented by them were for household expenses and not properly chargeable to her as payment for services.

"Now let us look at the bank statement of Helen E. Manhardt. This statement shows conclusively that every dollar deposited came from John Sheridan, because every deposit, except one dated December 15, 1936, was made either on the date she received the check from Sheridan or within one or at the most two days thereafter. Apparently she had no other income, yet she did lend money, notably to a Sylvia Glover, she clothed herself, bought an automobile and operated it and certainly spent some money for other things during this period of time. If she had another bank account, nothing was said about it at the trial. Furthermore, the majority of the checks drawn on this bank account were in even dollars, usually a multiple of $5. She produced neither paid checks nor receipted bills showing where this money or any of it had gone for household or living expenses, and made no explanation of her failure to do so. Most of the people from whom groceries and other necessities would be purchased are still around town and could have been subpoenaed as witnesses, but none appeared. That payment stands without explanation other than her word that it was for living and household expenses, and Sheridan's checks show he paid the rent. These omissions, coupled with some of the balance of her testimony, especially her truly remarkable explanation of the execution of the written contract upon which she based her first cause of action, cast considerable doubt on her veracity. All things considered, the jury is amply sustained by the evidence when it finds that she has been paid $6,605 on account between December 1, 1931, and January 27, 1937.

"As stated before, the administrator was able to find but 409 paid checks on the Sheridan bank account, yet 840 debit items appear on that statement. The total of the 409 checks was $21,606.91, so that the total represented by the 431 checks that are missing must have amounted to $17,821.99 disregarding a few items that are bank charges, federal taxes, etc. The total debits shown on the bank statement were $38,428.90. While there is no direct evidence to indicate that plaintiff received any of the checks that are missing, there is every indication of two things from this statement. The deceased was spending money, during the time that he was supposed to have been sick, bed-ridden and requiring the constant care of a nurse, and from the number of small items, it would look as though it were for living expenses. From a number of larger items, $100, $200, $300 and $500, he might have been giving some of this money to claimant. Many of these large items can be accounted for, many cannot, but none were.

"The checks that were found payable to plaintiff began December 31, 1931, and are at the rate of approximately $1,200 per year, and there is a strong inference at least that if the checks were available from December 1, 1927, to December 1, 1931, they would show similar payments during that time. Miss Manhardt had all checks that were produced in evidence in her possession, and all deposits that appeared on her bank account were represented by paid Sheridan checks. Whether she might have had other checks no one can say.

"Add to these circumstances the testimony of three witnesses, the administrator, J. J. Ediger, Tom Sheridan and Probate Judge Walter Adams that Miss Manhardt stated to them that she had been paid in full up to January 1, preceding the date [death] of John Sheridan, February 19, 1937. Add the further fact that she borrowed $600 from John Sheridan shortly before his death and gave him her note bearing interest for that amount. Had Sheridan been indebted to her at that time, it is quite certain she would not have given him a note, the $600 would have been for wages and not a loan.

"With all this evidence, there might be some doubt as to whether claimant had been working under a contract for a stated salary of somewhere around $100 per month and had been paid in full for all her services.

"Evidence had been admitted as to what services she had performed for the deceased, and they were many and varied. But, he was not sick all of the ten years, nor was he drunk all of the time, so that there were times, indefinite in extent, when the services of a trained or practical nurse were not necessary. Persons who qualified themselves on the witness stand as knowing what the services of a trained or a practical nurse were worth and were permitted to give their opinions as to such value, such opinions ranging from $30 to $50 per week. How many weeks she worked as a nurse and how many weeks she worked as a housekeeper cannot be determined from the record. One witness, who rented the apartment occupied by Sheridan and the claimant to them, a housekeeper herself, after detailing the condition of Sheridan at that time, and the nature of the work claimant was then performing for him, gave as her opinion the services were not worth over $5 a week during the time the two lived in her apartment.

"A jury, in determining the question of value of services rendered, is not bound to accept as conclusive opinions given by witnesses respecting such value. While the opinions of expert witnesses who are familiar with the character of the employment and the compensation usually paid for services of like kind and nature are entitled to great weight, such opinions are only to be considered in connection with other testimony in the case, in the light of which and its own general knowledge, the jury itself determines the value.

"In this case we have several uncertainties: The number of months or weeks services were furnished; the time required as a practical or trained nurse and the time in which the duties were no more than those of a housekeeper; and how much had been paid on account. In view of these uncertainties no jury could be expected to arrive at any very exact amount. This verdict is undoubtedly the result of a comparison of views and compromise, but when finally arrived at seemed to be the independent judgment of each juror and agreed to by the other eleven jurors at the time the jury was polled, and it is the opinion of the court that the verdict is amply sustained by the evidence and the motion for judgment notwithstanding the verdict will be overruled at the next motion day in Harvey county, January 5, 1938.

"Neither can the court see any reason for granting a new trial in the case and the motion for new trial will likewise be overruled at the same time."

Plaintiff contends the verdict was inadequate and clearly the result of prejudice and passion. We shall treat those subjects in re-

verse order. In the first place, the trial court did not concur in the contention the verdict was the result of prejudice and passion. It approved the verdict. One circumstance is sufficient to dispose of the contention of prejudice and passion. Sheridan died on February 19, 1937. There was ample evidence from which the jury might properly have concluded plaintiff had been fully paid for all services rendered to January 1, 1937. The verdict, however, discloses the jury allowed plaintiff somewhat more than the maximum value fixed for her services for the period from January 1, 1937, to Sheridan's death on February 19, 1937. The jury must have concluded it desired to allow her some additional compensation for the period prior to January 1, 1937. That conduct of the jury alone sufficiently refutes the contention of passion and prejudice.

Was the verdict inadequate? It was within the province of the jury to determine what constituted reasonable compensation for the services actually rendered and to determine what amount it would believe, in view of all the circumstances, had actually been paid to her. The trial court instructed the jury upon those subjects. It was instructed the burden of proof was upon the plaintiff to establish to its satisfaction by a preponderance of the evidence that plaintiff had performed the services at the instance and request of the deceased, the value of such services, and that she had not been paid therefor. It was the province of the jury to determine from the indefiniteness and uncertainty of the record the period of time plaintiff had actually worked and just what the character of those services was, whether as housekeeper or as nurse, the value thereof, and whether she had been fully paid, and if not, how much she had been paid. The jury may have believed she had received far more from Sheridan than the limited number of checks she produced indicated. That was its privilege. Epecially in view of her testimony concerning the signing of the so-called contract upon which her first count was based, which testimony the jury entirely disbelieved, it is altogether probable the jury may have disbelieved most of her testimony as to nonpayment as well as her testimony concerning the character of her work and the actual time during which she performed services. The jury must have concluded the amount of the verdict, together with the various amounts it had a right to believe she had received, constituted adequate compensation for the services rendered. In view of the record it is impossible to say the jury was obliged to return a verdict for any definite particular amount as a

balance remaining due and unpaid. Nor did plaintiff in her motion for judgment notwithstanding the verdict specify any definite amount which, according to her contention, the record disclosed she must be paid. Obviously the trial court did not err in overruling the motion. Since the trial court did not err in its ruling on that motion, there is nothing on that ruling before this court to review.

Plaintiff, however, insists this court has frequently held that under the provisions of G. S. 1935, 60-3317, it has authority to disregard technical errors and irregularities and to render such final judgment as justice requires. (*Mitchell v. Derby Oil Co.*, 117 Kan. 520, 232 Pac. 224; *Bolinger v. Giles*, 125 Kan. 53, 262 Pac. 1022; *Kansas Wheat Growers Ass'n v. Smith*, 127 Kan. 267, 273 Pac. 437; *Cox v. Trousdale*, 138 Kan. 633, 27 P. 2d 298.) That is true, but the decisions are not in point. The instant case is not one in which the record clearly and necessarily discloses that if plaintiff is entitled to any verdict she is entitled to a verdict in a definite amount. Nor is it a case in which technical errors or irregularities resulted in an erroneous verdict. Upon the record justice does not require this court to render a judgment nor is this court permitted to direct the district court to render a judgment contrary to the verdict. Moreover, any effort by this court to ascertain the exact amount due plaintiff, if anything, would entail an independent accounting, which function this court does not assume. (*City of Oswego v. Condon*, 124 Kan. 823, 825, 262 Pac. 542; *Farmers State Bank v. Commercial State Bank*, 136 Kan. 447, 455, 16 P. 2d 543; *Smith v. Derby Oil Co.*, 147 Kan. 300, 303, 76 Pac. 846; *Webster v. Toland*, 148 Kan. 36, 40, 79 P. 2d 884.) Furthermore, in order to reach the result plaintiff would have us reach, such an accounting would require this court to accept as true testimony which the jury did not believe, and to set aside a verdict which the trial court properly approved. That this court is not permitted to do.

It is next urged, if this court cannot direct the district court to render a judgment in a definite amount, the district court should be directed to grant a retrial upon the single issue of the amount of compensation to which plaintiff is entitled. Since this court has no right or authority to disturb the existing verdict or judgment it cannot direct a retrial of the action upon any issue.

The defendant has cross-appealed from the order overruling his demurrer to plaintiff's evidence. The first count having been eliminated, we need consider the demurrer only as to the second count.

Defendant's contention is that plaintiff failed to prove she had not been paid by the deceased. There was evidence she had not been paid and the court properly submitted the question of payment to the jury.

The judgment must be affirmed. It is so ordered.