Harry JOHNSON, Appellant,

v.

Hubert B. HERREN et al., Appellees.

No. 7540.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 17, 1963.

Rehearing Denied Jan. 14, 1964.

Ernest S. Fellbaum, J. Edwin Swift, Jr., Houston, for appellant.

Joyce Cox, Joe G. Roady, Fountain, Cox & Gaines, Houston, for appellees.

FANNING, Justice.

Harry Johnson sued Hubert B. Herren and E. E. Watson, partners, who operated the business of Herren-Watson Oil Company, the partnership, for monies allegedly due him under the terms of a written contract of employment dated May, 1949 and extended by another contract for an additional 10 year period in 1959, which contract of employment was terminated in 1960 by a sale of the business. Trial before the court without a jury resulted in a "take nothing" judgment except as to the amount admittedly due ($205.07) under paragraph 5 of the contract, which amount had been properly and lawfully tendered to plaintiff and had been refused by plaintiff. Plaintiff Johnson has appealed.

Appellant presents three points on appeal wherein he contends to the effect that the trial court erred (1) in construing the agreement in such a manner as to deny appellant 10% of the annual net profits from the business; (2) in failing to recognize Internal Revenue Tax Return Form 1065 as the form applicable in ascertaining the company's net profits in its estimate for income tax purposes to the Federal Government as the basis upon which the 10% of its annual net profits to appellant was to be determined; and (3) in denying appellant recovery under paragraph 5 of the agreement sued on, etc.

Appellees, by their counter-point one contend to the effect that no error of contract construction is shown because the trial court was not required to construe paragraph 3 of the contracts in order to enter its judgment, and by their alternative counter-point one contend that if the trial court was required to construe paragraph 3, it did not err in construing it to deny recovery by plaintiff, and appellees further contend by their counter-point 2 that the trial court did not err in construing paragraph 5 but fully and correctly determined the amount due thereunder ($205.07), which amount was awarded to plaintiff.

Johnson was employed as sales-manager of the partnership company under written agreement dated May 26, 1949. Sections 3 and 5 of the agreement were as follows:

"3. For the balance of your compensation hereunder, the Company shall pay you Ten Percent (10%) of its annual net profits from its business, as the phrase 'net profits' is herein defined. Payments on account of said net profits shall be payable to you monthly, and shall be based upon the Company's net profits as estimeted in its estimate for income tax purposes to the federal government, upon which it pays its estimated income tax, said payments to be adjusted and credited or debited to you on March 15 of each year after the final income tax return of the Company has been made to the federal government, and any sums due your from the Company at that time shall be paid to you at that time, and any overpayments to you shall be refunded by you to the Company at that time."

"5. In the event the Company elects so to do, it may sell its entire business and terminate this contract, in which event, you shall be paid 10% of the net profits, as that phrase is herein defined, arising out of said sale."

On June 1, 1959, a contract was entered into identical to the 1949 contract, except for an increase in Johnson's monthly draw.

During the period of the first 10 year contract, Johnson received monthly and yearly a detailed calculation of his percentage. From the beginning the statements employed, consistently, a method of computation which clearly indicated that income taxes of the partners, together considered as the "company" within the meaning of the contracts, were deducted prior to the determination of Mr. Johnson's percentage.

Johnson testified that he knew his percentage was being figured after the deduc-

tion of the partners' taxes. Throughout the entire term of his employment, under both contracts, Johnson never complained at any time to Mr. Herren, the operating partner, or anyone else concerning the fact that his percentage was so computed.

Johnson also at all times actually received, and always had access to, monthly financial statements of the company, prepared by an independent accounting firm, by which the figures and methods used his percentage could be checked.

After Johnson had worked for the company more than 10 years, receiving during that time monthly and yearly statements with reference to his percentage and knowing that the estimated income taxes of the partners were deducted prior to the determination of his percentage and not complaining about the computation on that basis and knowing that this interpretation had been consistently used, Johnson entered into the new agreement, renewing and extending his employment and containing provisions identical to those upon which the percentage computation had theretofore been made.

Thereafter, under the second contract, Johnson continued to receive the monthly percentage statements, drawn and computed consistently with those received under the first contract. Throughout the entire term of employment Herren relied upon Johnson's agreement in the method of computation of Johnson's percentage, keeping the books and paying taxes on the basis that the method used was correct.

Under both contracts Johnson, upon receiving his monthly statement, would also obtain a check in payment of the amount shown on the statement to be due. *Johnson often counter-signed the checks himself.*

Defendants-appellees among other things pleaded account stated, account settled, estoppel, ratification and waiver.

After judgment was entered, no findings of fact or conclusions of law were requested or filed.

Appellant's points 1 and 2 urge that the trial court erred in construing paragraph 3 of the contract. It is our view that the trial court correctly construed paragraph 3 in such manner as to deny judgment to plaintiff-appellant thereunder.

However we also think appellees' first counter-point is well-taken under the record in this case and the judgment of the trial court can clearly be affirmed without regard to the construction of paragraph 3 of the contract on the following theories:

1. Account stated. See the following authorities: Central National Bank of San Angelo v. Cox, Tex.Civ.App., 96 S.W.2d 746, err. dism.; Padgitt Bros. Co. v. Dorsey, Tex.Civ.App., 194 S.W. 1194; Burton v. Ostertag, 166 Kan. 374, 201 P.2d 676.

2. Account settled. See the following authorities: Union Realty Co. v. Ahern, D.C.Mun.App., 93 A.2d 84; Chicago M. & St. P. Ry. Co. v. Clark, 2 Cir., 92 F. 968, First National Bank v. Honeyman, 6 Dak. 275, 42 N.W. 771.

3. Equitable estoppel and estoppel by contract. See the following authorities: Theriot v. Smith, Tex.Civ.App., 263 S.W.2d 181, err. dism.; McDorman v. Goodell, Tex. Civ.App., 69 S.W.2d 428; Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, error refused.

4. Waiver and ratification. See the following authorities: Braxton v. Haney, Tex.Civ.App., 82 S.W.2d 984; Santa Ana Citrus Groves, Inc. v. First National Bank, Tex.Civ.App., 149 S.W.2d 310, error refused; Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855; 92 C.J.S. Waiver, p. 1048.

Appellant by his third point urges that the trial court denied him a proper recovery under paragraph 5 of the contracts.

The main dispute between the parties concerns the meaning of the term "net profits". Such phrase is said to be defined in the contract. A specific definition is not, however, apparent from the face of said

paragraph 5. Paragraph 3, above quoted, contains a more detailed reference with respect to net profits. Undoubtedly the intention was that "net profits" meant the same thing in paragraphs 3 and 5.

The absence of a specific definition gives great weight to the construction placed by the parties on the phrase "net profits." There can be no doubt that the parties construed the phrase to mean the sum remaining as profit after the taxes of the partners had been deducted. The construction of "net profits", applying as it does to both paragraphs 3 and 5, was followed in the computation of Johnson's percentage of the profits of the sale of the assets. 10% of the "net profits" as that phrase was defined and understood by the parties, was tendered to Johnson and found by the trial court to be due him and such amount due ($205.07) was awarded to Johnson by the judgment of the trial court.

Finding that the trial court entered a correct judgment, such judgment is affirmed.