Richard A. BERRYHILL

v.

MARSHALL EXPLORATION, INC.

Civ. A. No. 74–370.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 2, 1976.

A. J. Gray, III, Edwin Kidd Hunter, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, La., for plaintiff.

Frank S. Kennedy, Naff, Kennedy, Goodman, Donovan & Parnell, Shreveport, La., Carlile & Carlile, Marshall, Tex., for defendant.

## OPINION

DAWKINS, Senior District Judge.

Plaintiff, a geologist, here claims that his employment contract with defendant has been breached on numerous occasions by defendant's failure to convey certain work-

ing or overriding interests in wells which plaintiff helped develop.

Our jurisdiction is based upon 28 U.S.C. § 1332. Plaintiff and defendant are of diverse citizenship, plaintiff being domiciled in Shreveport, Louisiana; defendant is organized to do business under the laws of Texas, and its principal place of business is at Marshall. Venue is proper since plaintiff is domiciled here. 28 U.S.C. § 1391.

We find the facts to be as follows: On September 24, 1970, Quenton B. Carlile, secretary-treasurer and chief executive officer for defendant, employed plaintiff to work for defendant in his professional capacity. Under the contract, and in fact, Berryhill commenced working for defendant about October 1, 1970. Interpretation of this contract is a hotly debated issue; in particular, the phrase, ". . . Mr. Berryhill will be *carried* for a 3/128th working interest or a 1/64 overriding interest (at the election of Marshall Exploration, Incorporated) in any *new deals* that are put together after his employment commences." [1] (Emphasis added.)

As noted, Berryhill was employed as a geologist to evaluate and test oil and gas prospects which defendant might drill or wish to purchase. He performed extensive work for the company; evaluated wells, helped negotiate mineral prospects, obtained drilling permits, supervised routine matters at the Marshall, Texas, office, and sometimes spent long hours on well-sites doing manual labor.

The first wells completed by defendant after Berryhill began work were the Emma Dodd No. 1 and the T. W. Hook. Berryhill received an interest, belatedly, after the wells began producing in October, 1971. Carlile, claiming that the company was "strapped" economically, decided to convey a 1/64 overriding interest to plaintiff rather than a 3/128th working interest. Berryhill had to complain before receiving this interest; and once his checks started coming, either decided not to complain further that he was paying a portion of the completion costs of the wells, or simply was unaware that his checks were smaller than they would have been had not the costs been deducted.

More wells were completed and Berryhill did not receive any interest in them. He repeatedly complained. Following completion of the Grace Morris No. 1 well, plaintiff requested his fair share. After rejecting his request, Carlile claimed that plaintiff's employment contract had been altered so that Berryhill had no further interest in defendant's production. Plaintiff kept inquiring about his interest in the growing list of new wells. After repeated conversations, the topic became quite a sore subject. Carlile kept giving Berryhill the company's hard-luck story and finally plaintiff's relationship with both Carlile and the company deteriorated. Berryhill began to work at other odd jobs to help support his large family, and, on February 15, 1974, submitted his resignation.

---

1. These are the terms of the contract:

1. Mr. Berryhill agrees to commence rendering full-time services for Marshall Exploration, Incorporated on or about October 1, 1970, and continue these services so long as there is mutual satisfaction by Marshall Exploration, Incorporated and Mr. Berryhill.

2. Mr. Berryhill agrees to devote his full time and efforts to the effective operations of Marshall Exploration, Incorporated and agrees to submit to Marshall Exploration any prospect which he develops or which comes into his possession for Marshall Exploration's acceptance or refusal.

3. Mr. Berryhill will be paid the sum of one thousand dollars ($1,000.00) per month, plus auto expense reimbursement at the rate of ten cents (10¢) per mile. All auto travel will be measured from the home office at Marshall, Texas, and any travel expense necessary for Mr. Berryhill to travel from his residence to the office at Marshall, Texas, will not constitute travel expense. Also, Marshall Exploration, Incorporated will reimburse Mr. Berryhill for all out-of-town travel expenses incurred by him, which would include air travel fares, meals and lodgings, taxis or car rentals, ordinary tips and miscellaneous travel expenses. In addition to the cash compensation as set forth above, Mr. Berryhill will be *carried* for a 3/128th working interest or a 1/64 overriding interest (at the election of Marshall Exploration, Incorporated) in any new deals that he puts together after his employment commences.

4. Mr. Berryhill or Marshall Exploration, Incorporated can terminate this agreement at any time after giving forty-five day written notice. (Emphasis added.)

After giving the company his resignation, Berryhill continued working for it until March 29, 1974. During that interval, he assisted defendant by staking out new well locations and initiating farm-out requests for re-entry. In late February, Carlile (apparently not bothered by Berryhill's outside jobs and somewhat pleased with Berryhill's work product) offered to give plaintiff a raise.[2] Berryhill refused this offer because of his prior unjust treatment by defendant and also because he could not make ends meet with his meager income.

Examples of the company's refusal to honor plaintiff's contract were numerous. In the Grace Morris No. 1 deal, Carlile retained a ⁶⁄₆₄th carried interest while telling Berryhill the company was "too strapped" to convey his fair share to him. In the Northeast Hallsville Crane Unit, Berryhill received no interest in production although he had done extensive work on the project, which turned out to be a very profitable deal. In fact, the three owners of the Marshall company, Rex Brown, G. E. Byrne, and Quenton B. Carlile, transferred title to the unit out of the company's name and into their own names. Realizing his position in the company might not improve after such treatment, Berryhill finally did quit.

Since this is a diversity case, we must apply state law to matters of substance. *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Texas provides the proper state law for this action inasmuch as the contract was negotiated, performed, and breached there. *Fine v. Property Dam-age Appraisers, Inc.*, 393 F.Supp. 1304, 1308 (E.D.La., 1975); *Davis v. Humble Oil & Refining Company*, 283 So.2d 783 (La.App., 1973); 49 Tul.Law Rev. 1; Restatement of Conflicts II, §§ 6 and 187–188. Consequently, we now analyze the Texas law applicable to the facts at hand.

Berryhill's contract concerning promised conveyances of mineral rights is required by the Texas Statute of Frauds to be in writing.[3] Any amendments or modifications to the contract likewise must be in writing. *Warner v. Venture Petroleum Corp.*, 188 S.W.2d 596 (Tex.Civ.App., 1945). In interpreting a contract, it is of less importance what the parties meant to say; rather, the significant language is what in fact they did say. *Obelgoner v. Obelgoner, supra.*

If the contract is unambiguous, the Court cannot add new terms. *S. K. Y. Investment Corp. v. H. E. Butt Grocery Co.*, 440 S.W.2d 885 (Tex.Civ.App., 1969). Here the contract clearly set forth that Berryhill's mineral rights would be *carried* on all new deals put together after his employment commenced. Carlile was not sure whether the meaning of *carried* had been discussed with Berryhill; instead, he *assumed* that his geologist would interpret the contract to mean that defendant would pay costs of production only to casing point; and beyond that Berryhill would be responsible for his share of the costs. George Huffman, defendant's attorney, likewise did not recall any discussion of the casing-point limitation at the signing of the employment contract. Huffman felt, rather, that the "custom" of East Texas made insertion of the casing-point limitation unnec-

**2.** The terms of the new offer were a raise for Berryhill to $1250.00 per month, a 1% carried working interest to casing point on all new wells shallower than 7,000 feet, and a ½% carried working interest on all deeper wells.

**3.** Vernon's Texas Code Annotated, Bus. and C., § 26.01:

"(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. (b) Subsection (a) of this section applies to . . . (4) a contract for the sale of real estate; . . . (7) a promise or agreement to pay a commission for the sale or purchase of (a) an oil or gas mining lease; (b) an oil or gas royalty; (c) minerals; or (d) a mineral interest."

See *Obelgoner v. Obelgoner*, 526 S.W.2d 790 (Tex.Civ.App., 1975); *Stovall v. Poole*, 382 S.W.2d 783 (Tex.Civ.App., 1964).

essary; but, plaintiff's witness, Bob M. Lloyd, another Texas oil attorney, disputed the existence of the "custom" and said, when an interest was *carried,* it was carried "all the way." The only time the custom should be relevant is if the contract were silent. See generally, *S. K. Y. Investment Corp. v. H. E. Butt Grocery Co., supra.* Here, the contract is not silent. It clearly sets forth that Berryhill will be carried "all the way" without qualification or limitation (although defendant usually stipulated in the contracts that interests were *carried* only to casing point.)

■ Even if the contract could be considered ambiguous on its face, any ambiguity should be read in Berryhill's favor. The well-established rule in contract law is that an agreement is construed most strictly against its author if it is ambiguous and capable of more than one construction. *Chevron Oil v. E. D. Walton Construction Company, Inc.,* 517 F.2d 1119 (5th Cir., 1975); *Harris v. Phillips Pipe Line Co.,* 517 S.W.2d 361 (Tex.Civ.App., 1974). The contract was prepared by George Huffman, defendant's attorney, so it should be construed against defendant if, indeed, any interpretation is necessary.

■ Defendant has pleaded estoppel based upon plaintiff's "long continued silence." It bears the burden of proof in asserting this affirmative defense. *Barfield v. Howard M. Smith Co. of Amarillo,* 426 S.W.2d 834 (S.Ct.Tex., 1968). "To constitute an equitable estoppel or estoppel *in pais* there must have existed (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) to a party without knowledge, or the means of knowledge of those facts, (4) with the intention that it should be acted on, and (5) that the party to whom it was made must have relied on or acted on it to his prejudice. The basis of estoppel is deception; and in its absence, there can be no estoppel *in pais.*" *Pennzoil v. Socony Mobil Oil Co.,* 421

S.W.2d 416, 420 (Tex.Civ.App., 1967); see also, *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376 (S.Ct.Tex., 1965).

There was no showing here that plaintiff concealed facts from defendant, which, through Carlile, clearly knew the terms of its contract with Berryhill. He also knew that plaintiff constantly complained of not receiving his due. This was not concealment in any sense. In *Stowers v. Harper,* 376 S.W.2d 34 (Tex.Civ.App., 1964), a similar employment situation arose. There a salesman was found to have no duty to speak up and the defendant was not prejudiced by the plaintiff's forbearance to assert his rights when there existed a binding employment contract.[4]

■ Defendant cites *Employers Casualty Company v. Tilley,* 496 S.W.2d 552 (S.Ct. Tex., 1973), and *Ashland Oil & Refining Co. v. Beal,* 224 F.2d 731 (5th Cir., 1955), for the proposition that plaintiff should be estopped from asserting his employment contract rights. Both decisions easily are distinguishable from the situation here presented and even lend support to plaintiff's position. To be estopped, these cases say, one must have an affirmative duty to assert rights. Here, Berryhill had no duty to speak because Carlile could not decide to alter the contract unilaterally after completion of the Grace Morris No. 1 well; and, in fact, plaintiff did speak up on numerous occasions claiming his rights. He did not surrender any of his rights; instead he kept working with the hope that defendant would honor its promises.

"Waiver is an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it. In order to constitute a waiver it is essential that there be an *existing* right, benefit or advantage, a knowledge (actual or constructive) of its existence, and an actual intention to relinquish it. It must be a voluntary act with full knowledge of the facts." *Rio Delta Land Co. v. John-*

---

4. See also, *Concord Oil Co. v. Alco Oil & Gas Corp.,* 387 S.W.2d 635 (S.Ct.Tex., 1965)—The Court found no estoppel in a contract where both parties knew the terms of the contract; there was no affirmative duty to speak up in such a situation.

*son,* 475 S.W.2d 346, 350 (Tex.Civ.App., 1971). (Emphasis added.)

Waiver does not occur until the right arises and it is relinquished knowingly. *Aetna Life Insurance Co. v. Eilers,* 367 S.W.2d 732, 735 (Tex.Civ.App., 1963). Berryhill did not waive his right to claim working interests in wells drilled after the Dodd and Hook ventures (the only two wells in which he was given an interest). He made repeated demands for his interest in new deals until conversations became unpleasantly fruitless; his economic situation worsened, and finally he quit.

Defendant claims that, by accepting checks for production from the Dodd and Hook projects, he waived his rights to be *carried* for costs beyond casing point. Defendant decided unilaterally to bill plaintiff for costs and made an accounting entry to that effect before Berryhill received his first check (Tr. p. 162). Once again, Berryhill was short on income, and was happy to receive the checks. Cashing them did not waive his rights. The waiver must be an intentional relinquishment, and his frequent demands evidenced his intent to enforce his contract. *Rio Delta Land Co., supra.* Waiver frequently requires affirmative action or a substantial period of inaction. In *Johnson v. Herren,* 374 S.W.2d 253 (Tex.Civ. App., 1963), a case cited by defendant, an employee failed to assert his claim for additional salary for a period exceeding ten years. Here, however, production payments from the Dodd and Hook wells did not begin until 1972, and plaintiff filed suit on April 12, 1974, barely two years later. It hardly can be contended that Berryhill waived his rights to his employment contract when he patiently forbore quitting and suing earlier because of frequent promises by Carlile to pay him when the company's financial condition improved. No wonder, then, that the company showed such slow progress when its owners were siphoning off some of the best producers for themselves as indicated *supra.* But when the company's situation finally improved, Berryhill's did not. He then brought suit almost immediately.

Defendant cites several authorities in support of its position on the term *carried interest.* Those authorities state that the term normally is subject to negotiation and modification in particular contracts and capable of several different interpretations. Generally, *carried interest* means the person carried pays his share of costs *out of production. Weinert's Estate v. Comm'r of Internal Revenue,* 294 F.2d 750 (5th Cir., 1961); *Ashland Oil & Refining Company v. Beal,* 224 F.2d 731 (5th Cir., 1955); Williams and Meyers, *Oil and Gas Terms,* 3rd ed., 1971, at p. 49; Williams and Meyers, *Oil and Gas Law,* Vol. 2, § 424, at p. 430.

The pertinent language in this contested contract is, ". . . Mr. Berryhill will be *carried* . . . ," not that he would have a carried interest. If defendant intended this to be a *carried interest,* it should have stated this clearly because the language of this binding contract clearly was not to that effect. Moreover, defendant never claimed that Berryhill was liable for his proportionate part of all the costs (the normal construction of *carried interest*); rather, it contended that he was responsible only for completion and operating expenses. Defendant, defying the clear terms of the contract, Berryhill's expectations, and even custom, stands alone in its interpretation of the agreement.

In summary and conclusion: the terms of Berryhill's employment contract with defendant were clear and unambiguous. He was to receive, in addition to his salary, a bonus on each new well in which the company had an interest, plus the overriding or working interests stipulated in the contract. He received part of his interest on the first two wells completed after he began work, thereafter receiving no further interest; and, after several years of bickering with Carlile, he quit. During his connection with the company, Berryhill was dissatisfied, and frequently complained, about receiving less than was due him. He is not estopped from asserting his rights. He fulfilled his end of the bargain; and he

did not waive those rights, since he promptly brought suit upon fully realizing that the company would not perform its obligations. Therefore, we hold that the defendant breached its contract with Berryhill, who is entitled to have it enforced.

Counsel for the parties shall meet and agree upon the form of judgment to be entered herein, and submit it to us for signature within fifteen days from this date.